## Pyatt's Administrator v. Chesapeake & Ohio Railway Company, et al.

(Decided February 15, 1918.)

### Appeal from Mason Circuit Court.

1. Railroads—Signals and Lookouts.—It is the duty of those in charge of a railroad train operating along a street to give reasonable and timely warning by ringing the bell or blowing the whistle, or other reasonable warnings of the approach of trains, and to keep a lookout for the presence of persons upon the tracks, and to run its trains at such speed as ordinary care for the safety of such persons requires.

2. Railroads—Actions—Instructions.—An instruction which tells the jury to find for the defendant company unless the jury believe from the evidence that the defendant, and those in charge of the train saw, or by the exercise of ordinary care could have discovered decedent's peril in time to have avoided the injury, and while not as explicit and certain as it could be made, is, nevertheless, not so erroneous or misleading as to warrant a reversal of a judgment simply because of the omission of the words, or any one or more of them after the expression "defendant, and those in charge of the train."

ALLEN D. COLE, FRANK P. O'DONNELL and H. W. COLE for appellant.

WORTHINGTON, COCHRAN & BROWNING for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Thirteen-year-old Gertrude Pyatt, after paying a visit to a friend in Maysville, started on her way home carrying with her a small child. When she came to the railroad crossing she encountered an embankment up which she climbed to the tracks on the street. The child was quite a heavy load for her to carry up so steep an incline. When she came to the tracks she stepped upon the ends of the cross-ties and started walking towards her home, at the time looking down at the child in her arms. At that moment a freight train of thirteen cars, pushed by an

engine and tender, was advancing towards her and within forty or fifty feet of the place where she came on the track. She was traveling towards the approaching train. On one side another train was passing making a great noise. On the other side was a pile driving machine and other machinery giving off deafening sounds. On the flat car nearest her in the approaching train, was a brakeman who saw her some forty feet in front of the train and shouted a warning to her, at the same instant giving an emergency signal to stop the train. She had come up from under the embankment and appeared suddenly upon the tracks, and the trainmen had not seen her until that instant. Her attention was so absorbed in the little boy she was carrying that she did not realize the approach of the train. When she looked up and saw it the car was only about two feet from her face, and before she could get off the track it struck her in the face and on the shoulder, knocking her down; she fell outside the rail and the child, which was in her arms, fell farther away from the track. Before she could get up the train passed by where she fell and the boxes on the wheels knocked her in the head and about the face. In her desperation she caught hold of the track and the wheels ran over and mashed off her finger and thumb. About this time a witness who was at work close by came to her assistance and pulled her from under the train. She was carried to her home, which was nearby, and from there taken to a hospital over which the railroad company had supervision. She was at the hospital only a few days and returned home, where she remained until the ninth day following the accident, when tetanus developed, and she shortly thereafter died. This action was brought by her administrator to recover fifteen thousand dollars to her estate for the loss of her power to earn money. The first paragraph of the answer is a traverse; the second is a plea of contributory negligence on the part of the child, and the third is a plea of contributory negligence on the part of the mother of the child in allowing her to be and play upon and about the railroad tracks. Upon the trial no evidence was introduced to sustain the third paragraph of the answer, but there was evidence of decedent's contributory negligence. The court instructed the jury that it was the duty of the railroad company in operating its trains along that street, in the city of Maysville, to give reasonable and timely warning by ringing

the bell or blowing the whistle or other reasonable warning of the approach of the trains, and to keep a lookout for the presence of persons upon its tracks and rights-of-way for the purpose of avoiding injury to them by the operation of the train, and to run its cars and trains at such speed as ordinary care for the safety of such persons required; and if the jury believed from the evidence that the defendant failed to perform any of these duties and plaintiff's intestate was injured as a result thereof, the verdict should be for the plaintiff. This instruction was not objected to by plaintiff, but objection was made to instruction number three given by the court, which told the jury to find for defendant company if it believed she failed to exercise that degree of care required of a person of her age under like circumstances, even though the railroad was negligent, as set forth in instruction number one, unless the jury further believe that the defendant, and those in charge of the train, saw, or could, by the exercise of ordinary care, have discovered decedent's peril in time to have avoided the injury.

The objection to this instruction is directed at the last clause in which it is stated: "Unless the jury further believe that the *defendants* and *those in charge of the train saw,* or could by the exercise of ordinary care have discovered decedent's peril in time to have avoided the injury to her, and negligently failed to do so, in which event the jury will find for the plaintiff." It is the contention of appellant that the instruction should have directed the jury to find for the plaintiff if it believed from the evidence that the *servants of defendant, or any one or more of them,* in charge of the train saw the peril of decedent and neglected to perform the duty which was then incumbent upon the train crew, the verdict must be for plaintiff. While it is insisted that this instruction put a greater burden upon the plaintiff than the law enjoins in that it requires all of the members of the crew to have known of the peril of the decedent instead of one or more of them, we are of opinion that the jury was not misled by this expression, nor could reasonable men be so misled. To be sure, it would have been more explicit and somewhat clearer had the court used the expression suggested by counsel for appellant, but this court in several cases has approved instructions practically in the same form as the one given in this case.

Another ground for reversal insisted upon by appellant is the admission of incompetent evidence for the defendant railway company. Special stress is laid upon the following question and answer:

"Q. The violent stop signal, what was that for?

"A. On account of the girl coming up back of the signal post on the track just like a mushroom coming up out of the ground."

It is insisted that this evidence was highly prejudicial, because it was based on expressions of hearsay. The figure of speech employed by the witness in making his answer was rather inapt. To say that the child came upon the track like a mushroom coming up out of the ground would indicate she came up very slowly which, if so, would not have been to her prejudice. We can not agree with counsel that this evidence was prejudicial.

The third ground alleged for reversal is the misconduct of the foreman of the jury that tried the case. In the motion and grounds for new trial, it is charged that a member of the jury, who acted as foreman, in company with a civil engineer, a witness in the case, visited the scene of the accident during an intermission in the trial and took measurements upon the ground and examined the objects thereabout, and that the juryman, after the case was submitted to the jury, made a map of the premises and argued the case for the defendant company from the standpoint of facts obtained from an examination of the premises. This charge against the integrity of the jury was based upon the affidavit of counsel to the effect that they were *informed* and *believed* that the juryman had so acted during the trial. Had evidence sufficient to sustain the charge been adduced, no doubt the trial court would have granted a new trial, and should have done so; but upon the hearing before the court on the question of the conduct of the juror, it was shown that counsel had been misinformed and that in truth and in fact the juror had not examined the premises, took measurements, made a map, or argued in the jury room facts obtained in this manner. The court, therefore, properly overruled the motion and grounds for a new trial.

Upon the whole, we are of opinion the instructions given the jury properly presented the law of the case; that there was no incompetent evidence introduced on behalf of the company that was prejudicial to the rights

of appellant nor was the appellant deprived of relevant evidence, and that there is no error disclosed by the record which would justify a reversal of the judgment.

Judgment affirmed.